Summers, J.
The action was brought by the defendant in error, The Hamilton Dime Savings Bank Company, of Hamilton, Ohio, against the Franklin Bank, of Cincinnati, Ohio, upon a check drawn by C. G. Blake & Co. upon the Franklin Bank for two hundred and seventy-five dollars, payable to the order of C. G. Blake, and certified by the Franklin Bank to be good, and endorsed by C. G. Blake and Charles Werbel.
On Friday, October 16, 1903, Blake bought a horse from Werbel and endorsed the check to the order of Werbel and delivered it to him in payment for the horse-. The endorsement of certification was as follows: “Good for $275.00 when properly endorsed. The Franklin Bank, H. Sachteleben, Teller.” Werbel endorsed the check, and *194 on the following'Monday, October the 20th, deposited it to his account with The Hamilton. Dime Savings Bank Company, and was given credit therefor on the books of the bank. The Hamilton Dime Savings Bank Company sent the check to the Atlas National Bank, of Cincinnati, for collection and it was protested for non-payment for the reason “Payment stopped.” Thereupon, on November 19, 1903, the defendant in error sued the Franklin Bank on the check, and the Franklin Bank, under Section 5016, Revised Statutes, filed a motion for an order of interpleader, which was granted, the amount of the check with interest was paid into court and C. G. Blake was substituted as defendant. Blake filed an answer averring that he had been induced to purchase the horse and to deliver the check in payment therefor by the false and fraudulent representations of Werbel, that Werbel is the owner of the check, that the plaintiff, The Hamilton Dime Savings Bank Company, received the check only as collecting agent for Werbel and with knowledge that Werbel had been notified that payment on the check would be stopped. A jury was waived and the court stated its findings of fact separately from its conclusions of law. Judgment was given for the bank for the amount paid into court, less costs to the date of that payment. The court found that The PTamilton Dime Savings Bank Company was the purchaser of the check for value and before notice and without knowledge of Blake’s claim. On error the circuit court affirmed the judgment, not, however, on the ground that the bank was entitled to the protection afforded *195 to bona fide purchasers, the court stating in its opinion, as a matter of law, that the savings bank was not a purchaser for value, but that the transaction was the ordinary and usual one of a deposit by a depositor and not a purchase of the check for value by the bank.
At- the time the bank received notice of the claim of Blake it had on deposit to the credit of Werbel a. sum in excess of the amount of the check
No question is made as to the authority of the teller of the bank to bind the bank by the certi-i fication of the check.
The circuit court affirmed the judgment on the ground that “Werbel became the absolute owner of the check free from the claim of Blake to the same extent as if it had been money. 2 Daniel on Negotiable Instruments, Section 1601; Morse on Banks and Banking, Section 414.”
The circuit court was right in its opinion that the Hamilton Bank was not a purchaser of the check.
In the absence of special agreement the deposit in bank to his credit of an uncertified check by the holder, whether drawn on that bank or another, is deemed to be for collection and not for payment, and if there be no funds to meet it or if it be returned dishonored the deposit bank may return it to the depositor and cancel the credit. Daniel on Negotiable Instruments, Section 1623; Morse on Banks and Banking, 320 and 321; National Gold Bank & Trust Co. v. McDonald, 51 Cal., 64. And in such case if the bank receives notice of the invaliditv of the check *196 it cannot become a bona fide holder by subsequent payment. “The mere discounting of paper and placing the amount thereof to the credit of a <Je“ positor, who already has a large balance to his credit, does not make the bank a purchaser for value so as to protect it against infirmities in the paper. Entering the amount of the discount to the credit of the depositor simply creates the relation between the bank and the depositor of debtor and creditor, and so long as that relation remains, and the deposit is not drawn out, the bank has simply promised to pay the depositor, has parted with no value, and is not entitled to the protection of a bona fide holder of paper.” Mann v. National Bank, 30 Kans., 412. “The mere credit of a check upon the books of a bank, which may be canceled at any time, does not make the bank the bona fide purchaser for value. If after such credit, and before payment for value, upon the faith thereof, the holder receives notice of the invalidity of the check, he can not become a bona fide holder by subsequent payment.” Daniel, Negotiable Instruments (5th ed.), Section 1652 Central National Bank v. Valentine, 18 Hun, 417; Manufacturers’ National Bank v. Newell. 71 Wis., 309.
The Hamilton Bank, therefore, upon the evidence, was not a purchaser of the check, or entitled to the protection of a bona fide holder of the paper, unless it is so entitled by reason of the fact that the check was certified.
In this state a bank check for part of the sum due the drawer, does not, before acceptance by the drawee, constitute an equitable assignment of *197 the amount for which it is drawn, (Covert v. Rhodes, 48 Ohio St., 66) and the holder can not maintain an action against the bank for the amount of the check, although it has funds to the credit of the drawer sufficient to meet it, (C. H. & D. R. R. Co. v. Bank, 54 Ohio St., 60.).
This is now made the law by statute. Section 3177v, Revised Statutes, provides: “A check is a -bill of exchange drawn on a bank payable on demand.” And Section 3177.2 is as follows : “A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check.”
But this is a certified check. Mr. Daniel says (Section 1602) that the certification of checks is an expedient and outgrowth of modern commerce quite recent in its origin, but now of daily and extensive occurrence. And in Merchants’ National Bank of Boston v. State National Bank of Boston, 10 Wall., 604, decided in 1871, Mr. Justice Swayne says in the opinion that “it is computed by a competent authority that the average daily amount of such checks in use in the city of New York, throughout the year, is not less than $100,000,000,” and that “we could hardly inflict a severer blow upon the commerce and business of the country than by throwing a doubt upon their validity.”
And speaking of their legal effect he says:
“By the law merchant of this country, the certificate of the bank that a check is good is equivalent to acceptance. It implies that the check *198 is drawn upon sufficient funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money. The transferee takes it with the same readiness and sense of security that he would take the notes of the bank. It is available also to him for all the purposes of money. Thus it continues to perform its important functions until in the course of business it goes back to the bank for redemption and is extinguished by payment.
“It can not be doubted that the certifying bank intended these consequences, and it is liable accordingly. To hold otherwise would render these important securities only a snare and delusion.
“A bank incurs no greater risk in certifying a check than in giving a certificate of deposit. In well-regulated banks the practice is at once to charge the check to the account 'of the drawer, to credit it in ‘certified check account/ and when the check is paid, to debit that account with the amount. Nothing can be simpler or safer than this process.
“The practice of certifying checks has grown out of the business needs of the country. They enable the holder to keep or convey the amount specified with safety. They enable persons not *199 well acquainted to deal promptly with each'other, and they avoid the delay and risks of receiving, counting and passing from hand to hand large sums of money.”
Daniel, Section 1603, says that when the check is certified the bank becomes at once the principal debtor, and that when the holder procures the bank to certify the check “in contemplation and by operation of law, it is the same as if the funds had been actually paid out by the bank to the holder, by him redeposited to his own credit, and a certificate of deposit issued to him therefor. In other words, a certified check is a short-hand certificate of deposit in favor of the holder, and payable to him, or to him or order, or to bearer, according to- its terms.” Again he says: “It will be too late after the bank has certified' the check for the drawer to revoke it, and the bank will be bound to pay it though notified by the drawer not to do so.” And again he says, in Section 1605, that “the check when certified circulates as the representative of so much cash in bank, payable whenever demanded, to the holder. It is then like cash, but still it is not the same as cash, for ‘nullus simile est idem.’ ”
The drawer by delivery of a certified check, in the absence of special agreement, is not discharged from liability^-, the only effect of the certification being to add the credit of the bank to that of the drawer (Daniel on Negotiable Instruments, Section 1626; Oyster & Fish Co. v. Bank, 51 Ohio St., 106), and the same is true as to a holder who procures the check to be certified before delivery. He is a new drawer and will be held liable as well *200 as the bank. If, after delivery, the holder procures a check to be certified, the drawers and endorsers are thereby discharged. Daniel on Negotiable Instruments, Section 1601a; Revised Statutes, Section 3177y. In this case the payee, Blake, procured the certification of the check after delivery to him and before delivery by him to Werbel, thereby discharging Blake & Company, the drawers, and making himself as well as the bank liable on the check. Section 3177 x, Revised Statutes, provides that where a' check is certified by the bank on which it is drawn the certification is equivalent to an acceptance, and under Section 3177z, Revised Statutes, by necessary implication, the certification operates as an assignment of the funds to meet the check and makes the bank liable to the holder.
What then are the rights of the parties? If Blake had given Werbel money instead of the check, and Werbel had deposited the money to his credit in the Hamilton Bank the relation of debtor and creditor between the bank and Werbel would thereby have been created. In C. H. & D. R. R. Co. v. Bank, 54 Ohio St., 60, 71, supra, it is .said by Spear, J.: “The relation of bank and general depositor is simply the ordinary one of debtor and creditor, not of agent and principal, or trustee and cestui que trust.” And again: “The deposits become the absolute property of the bank, impressed with no trust, and the bank’s right to use the money for its own benefit is immediate and continuous.” The money would belong to the bank and Blake could not acquire any interest in it or impose any liability on the bank merely by notify *201 ing it that Werbel had obtained the money from him by defrauding him in a horse trade. If, instead of money, Blake had traded a piano to Werbel for the horse, it may be that Blake could repudiate the trade on the ground of fraud and that after tender back of the horse the title to the piano would reinvest in him and that he could then recover it from any one excepting a bona fide purchaser. But money loses its identity, arid if the relation of debtor and creditor between the bank and Werbel would arise upon the deposit of the money, then the bank would necessarily be treated as a bona fide purchaser and title to the money would not be restored to Blake even by a repudiation of the trade and a tender back of the horse. Now, while it is true, as has been pointed out, that the delivery of the check was not payment for the horse and that Blake was liable on the check, still if certified checks are to circulate as money and to perform the tiseful purpose in trade they have heretofore, the deposit of them in bank to the credit of the holder must be, so far as the rights of the endorser are concerned, treated as a deposit of money. The transaction- under consideration may serve in some slight measure to illustrate their use. Blake may have supposed that Werbel would want cash for the horse and would not accept his check, and, not wishing to carry the money from Cincinnati to Hamilton, he procured the certification of the check, and Blake accepted it as readily as he would have accepted cash. But, if he could not accept it with the same security that he could cash, then, under such circumstances, a certified check could not be used at all, or the *202 endorsee of such a check, if he wishes to avoid embarrassment and delays, such as have resulted in this case, must at once present the check for payment and then deposit the money instead of the check in bank. This being so, then the obligation of the Franklin Bank to pay the check was not affected by the notice to it by Blake not to pay, and the right of the Hamilton Bank to enforce payment was not affected by notice of Blake's claim.
Some question is made as to the right to an order of interpleader in such a case as this, but in view of the conclusion reached it is not necessary to consider it. And it may be added, that even if the certified check were not treated as money but as property Blake had given Werbel for the horse, Blake cpuld neither recover it nor defend against payment of it in a suit upon it, in the absence of a showing that he had repudiated the trade and had tendered the horse to Werbel, which was not done in this case, nor was Werbel made a party to the action. Morrison v. Eaton, Tappan, 173; Manhattan Life Ins. Co. v. Burke, 69 Ohio St., 294; Archer v. Bamford, 3 Stark., 175; Lewis v. Cosgrave, 2 Taunt., 2; Heaton v. Knowlton et al., Admrs., 53 Ind., 357; Grubbs et al v. Barber, 102 Ind., 131.
The judgment is

Affirmed.

Price, C. J., Shauck, Crew' and Spear, JJ., concur.